# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ENERGY & ENVIRONMENT LEGAL INSTITUTE** ) | |
| **2020 Pennsylvania Avenue, NW #186** ) | |
| **Washington, DC 20006** ) | |
| ) | |
| **FREE MARKET ENVIRONMENTAL** ) | |
| **  LAW CLINIC** ) | |
| **9033 Brook Ford Road** ) | |
| **Burke, Virginia, 22015** ) | |
| ) | |
|         **Plaintiffs,** ) | |
| ) | |
|         **v.** )          **Civil Action No. 14-698** | |
| ) | |
| **UNITED STATES ENVIRONMENTAL** ) | |
| **  PROTECTION AGENCY** ) | |
| **1200 Pennsylvania Avenue, NW** ) | |
| **Washington DC** ) | |
| ) | |
|         **Defendant.** ) | |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs ENERGY & ENVIRONMENT LEGAL INSTITUTE ("E&E Legal") and FREE

MARKET ENVIRONMENTAL LAW CLINIC ("FME Law") for their complaint against

Defendant United States ENVIRONMENTAL PROTECTION AGENCY ("EPA" or "the

Agency"), allege as follows:

1.  This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to

    compel production under a FOIA request seeking certain Agency records from a regional

    office over a three-month period.  The records concern EPA activities involving the trace

    element selenium naturally present in soils, an unusual retroactive veto of a granted

1

mining permit, and efforts to expand the Agency's regulatory reach by regulating earth-moving activities on the grounds they inherently lead to "conductivity" pollution of streams (the measure of the ability of water to pass an electrical current, affected by the presence of dissolved solids).

2. The requested emails and other records are of significant public interest due to the ongoing controversy surrounding EPA activities described as the Agency's "War on Coal", particularly an EPA "retroactive veto" of a previously issued mining permit overturned by this Court then upheld by the D.C. Circuit,[1] and other Agency actions to restrict mining activity through the regulation of selenium for its possible impact on insect populations, all of which are ongoing matters of public controversy.  Therefore, the public would benefit from further understanding of the EPA's dealing with these complicated and important issues.

3. Defendant EPA initially denied plaintiffs' fee waiver request on the basis that plaintiffs "have not expressed a specific intent to disseminate the information to the general public."  After plaintiffs' administrative appeal pointed EPA to the numerous times its request so expressed this intention, demonstrating that the stated basis for denial was facially untrue, EPA dropped that grounds for denial of plaintiffs' fee waiver and substituted another.

--------

[1] EPA's move was "a stunning power for an agency to arrogate to itself when there is absolutely no mention of it in the statute." (Berman Jackson, J.) *Mingo Logan Coal Co. v. U.S. EPA*, 850 F. Supp. 2d 133, 139 (D.D.C. 2012) *Rev'd, Mingo Logan Coal Co. v. United States EPA*, 714 F.3d 608 (D.C. Cir. 2013). *See e.g.*,, Miguel Quiñones, "Lawsuits come and go, but debate over EPA veto rages on", E&E News, March 28, 2014, http://www.eenews.net/greenwire/2014/03/28/stories/1059996932.

4. Plaintiffs' appeal also detailed how defendant waived its ability to even seek fees by failing to respond to plaintiffs' request within the statutorily required period of time.

5. In addition, defendant combines its demands for assurance of payment under this FOIA request with a demand for assurance of payment under an unrelated FOIA that is already the subject of litigation (*EELI et al. v. EPA*, cv:14-538, filed April 1, 2014). Specifically, EPA has demanded an assurance of payment of $2,000 as a condition of processing either request or both.

6. By unjustly refusing to grant plaintiffs' fee waiver under FOIA for any responsive records defendant EPA constructively denies the underlying request for records.

7. This is the latest in a series of plaintiffs' requests defendant is blocking through a pattern of behavior of improperly denying the fee waiver provided by statute for non-profit groups that broadly disseminate public information of significant public interest.[2]

8. The original FOIA statute, subsequent precedent and recent amendments all make plain that FOIA's fee waiver provision is to be interpreted broadly toward avoiding imposition of fees as a barrier to access for certain groups.

9. Abuse of fee waiver to impose a financial barrier to not-for-profit groups' access to public records is not limited to defendant EPA. However, defendant's unique and selective employment of this practice has escalated in recent years and is particularly

---

[2] *See e.g.,* EPA FOIA request nos. EPA-HQ-2014-003658, HQ-2014- 000344, HQ-2014-001664, R10-2013-008285, HQ-2014-002006, R3-2014-004011, R3-2014-004759. FOIA provides for waiving of fees associated with FOIA requests under three distinct circumstances: (1) when the Agency fails to meet statutory deadlines; (2) when disclosure of the information is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester; and, (3) when a request comes from an "educational institution" or from a "non-commercial scientific institution" or a requester who is a "representative of the news media." 5 U.S.C.S. § 552(a)(4)(A)(iii) Plaintiffs argue they deserve relief under each set of circumstances.

pronounced against plaintiffs.  Defendant's denial of fee waiver requests for groups that generally oppose EPA's regulatory agenda while routinely granting them for ideologically aligned groups with which it works closely on shared agenda is the subject of an ongoing EPA Office of Inspector General (OIG) inquiry.[3]

10. Plaintiffs, which have filed numerous requests on issues of common interest together, have analyzed EPA's application of this provision and found statistically significant indications of biased application of this requirement.  For example, in the six months leading up to and including the present FOIA request (May 18, 2013-January 30, 2014), EPA received 345 fee waiver requests, providing full or partial fee waiver to one class of requester, environmentalist pressure groups, 58% of the time, but granting fee waivers to plaintiffs only 25% of the time, to "conservative" requesters 33% of the time, and not once to educational, state and local government and tribe parties requesting fee waiver.[4]

11. EPA's campaign of inconsistently applying the law forces plaintiffs, in particular, to spend significant resources by summarily refusing to produce records on the basis that plaintiffs don't qualify for a fee waiver, forcing plaintiffs to prepare an appeal.  For a time, plaintiffs would prepare a lengthy appeal and EPA would then waive the fees.  In

---

[3] *See, e.g.,* Memorandum from Carolyn Copper, Asst. Inspector General, Office of Program Evaluation, U.S. Envtl. Prot. Agency Office of Inspector General, to Malcolm D. Jackson, Asst. Adm'r and Chief Information Officer, Office of Environmental Information, U.S. Envtl. Prot. Agency, Notification of Evaluation of EPA's Freedom of Information Act Fee Waiver Process (Jun. 19, 2013) available at: http://www.epa.gov/oig/reports/notificationMemos/newStarts_06-19-13_FOIA_Fee_Waiver_Process.pdf, last retrieved 3/25/2014.  Requesters are aware through undersigned counsel Horner, who interviewed with EPA's OIG as part of the inquiry, that EPA's OIG has "randomly" decided to not consider EPA's treatment of either of the instant plaintiffs in its inquiry, although plaintiffs were two of the three groups whose revelations prompted Congress to request the inquiry.

[4] This analysis was of information produced in response to EPA FOIA No. EPA-2014-002474, Excel spreadsheet of which is available at https://foiaonline.regulations.gov/foia/action/public/view/request?objectId=090004d280186d73.

response to this "make work," plaintiffs began to include in their original requests all the justification for a fee waiver that requesters normally place into an appeal.  EPA then began ignoring the lengthy fee waiver justifications, denying fee waivers entirely without foundation (*e.g.*, as in the present case, on the basis that assertions made in the requests were not actually made), again forcing plaintiffs to prepare appeals.  EPA would then grant the appeal and waive fees.  This practice also prompted plaintiffs to test whether EPA even reads plaintiffs' requests before denying them (see para. 13, *infra*), indicating that EPA does not do so.

12.  EPA then became more aggressive.  Despite the fact that plaintiffs' requests for fee waivers were materially identical to its requests routinely granted them by federal agencies --  the U.S. Department of Labor, Department of Energy, Federal Energy Regulatory Commission, and even EPA -- EPA began to summarily deny plaintiffs' appeals.  Plaintiffs responded by filing suit, at which time EPA would quickly agree to grant the fee waiver  if plaintiffs dropped the suit.  EPA then escalated further by refusing to grant fee waiver even after being sued, imposing further delay and cost as matters moved forward in the courts.  Although not used in this case, one new twist by defendant is to refuse to review and produce records until after plaintiffs agree to payment, while refusing to state what that payment must be.  EPA would delay proceedings in court, continuing to deny fee waiver even after defendant's counsel acknowledged defendant had waived its ability to seek fees by missing statutory deadlines.

13. In response to the pattern of facially unsupportable denials that plaintiffs failed to state an intention to broadly disseminate responsive information, in one recent request plaintiffs

inserted a "chalkboard" similar to that described in the appeal of the present matter, *supra*, on which they wrote ten times, "We intend to broadly disseminate responsive information", as well as extensively elaborating how and their pattern and practice of doing so.[5]  EPA promptly denied that request stating that plaintiffs failed to express an intention to broadly disseminate.

14. During the period of time between when defendant initially denied plaintiffs' fee waiver in the present matter on those same grounds and when it ruled on plaintiffs' appeal, plaintiffs informed a court of this behavior in a complaint also made necessary by EPA's actions (*EELI et al. v. EPA*, cv:14-538 (RC)(filed April 1, 2014)).  Also, this pattern of behavior drew media attention.

15. Soon thereafter defendant granted plaintiffs' appeal of the "chalkboard" denial, which involved a matter of far less public interest than the present matter.

16. Now, having been shown in pleadings and media coverage that it apparently would not even read plaintiffs' requests before denying them, EPA has abandoned the serial claim that plaintiffs do not assert an intention to broadly disseminate, moving on to now claiming in its three most recent responses that instead plaintiffs do not explain how their request will significantly contribute to public understanding of governmental operations or activities.  In the present case EPA even invents a requirement found nowhere in FOIA, that plaintiffs demonstrate how the public will be educated on the particular *issue,* instead of *how the public will be educated on government operations or activities.*

---

[5] HQ-2014-003658, overturned on April 15, 2014.

17. Plaintiffs have watched this escalation of resistance by EPA against all of plaintiffs' recent requests, and its inconsistent application of FOIA, which appears to be specifically targeting plaintiffs' requests.  For example, EPA has on multiple occasions informed undersigned counsel Horner that, *e.g.*, requests "from yourself or your affiliated organizations" [sic] are segregated and handed separate from others' requests.

18. This pattern of behavior as manifested in the present request is improper and violates FOIA.  This biased implementation of the law extends to declining to even read plaintiffs' requests before denying them, forcing the lengthy administrative appeals and now litigation processes, which imposes costs both to plaintiffs (and taxpayer) in time and resources.

19. EPA's efforts, if successful, would bar plaintiffs from obtaining copies of records others obtain for free, apparently due to their positions on EPA activities, and already frustrate the purpose of the Freedom of Information Act.  This escalation must end.

20.  Plaintiffs meet all the requirements for a fee waiver.  Recent EPA actions taken against plaintiffs impose an economic barrier to access and an improper means of delaying or otherwise denying access to public records, and have left plaintiff with no option but to sue.

## **PARTIES**

21. Plaintiff Energy & Environment Legal Institute (E&E Legal) is a nonprofit research, public policy and public interest litigation center incorporated in Virginia and dedicated to advancing responsible regulation and in particular economically sustainable environmental policy.  E&E Legal's programs include analysis, publication and a

transparency initiative seeking public records relating to environmental and energy

policy and how policymakers use public resources.

22. Plaintiff Free Market Environmental Law Clinic (FME Law) is a nonprofit educational,

research, public policy, and public interest litigation center based in Virginia and

dedicated to advancing responsible regulation and in particular economically sustainable

environmental policy.  FME Law's programs include teaching, clinical education,

continuing legal education, research, publication and litigation and include a

transparency initiative seeking public records relating to environmental and energy

policy and how policymakers use public resources, and a program of research on

governmental organizational and governance pathologies.  It regularly and broadly

disseminates responsive public information to the public at large.

23. Defendant EPA is a federal agency headquartered in Washington, DC whose stated

mission is to "protect human health and the environment."

## <u>JURISDICTION AND VENUE</u>

24. This Court has jurisdiction pursuant to 5 U.S.C. § 552(a)(4)(B), because this action is

brought in the District of Columbia, and 28 U.S.C. § 1331, because the resolution of

disputes under FOIA presents a federal question.

25. Venue is proper in this Court under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e)

because Defendant EPA is a federal agency operating in the District of Columbia and a

substantial part of the events or omissions giving rise to the claim occurred in the District

of Columbia.

**FACTUAL BACKGROUND**
**Plaintiffs' FOIA Request EPA-R3-2014-004011**

26. On December 5, 2013, plaintiffs submitted a FOIA request by successful fax

    transmission to the fax number EPA's Region 3 FOIA office publicly advertises for FOIA

    requests (215.814.5102), which plaintiffs' fax transaction log shows was successful for

    all 18 pages of the request, seeking from the relevant program office (emphasis in

    original):

    > "**copies of all emails, text messages and/or instant messages sent to or from
    > anyone in EPA Region III Water Protection Division, citing or using the
    > following seven words or terms: the "United Company", Arch, Spruce,
    > Mingo, Logan, selenium, and/or MTM,** dated from November 1, 2010 through
    > January 30, 2011, inclusive."

27. Plaintiffs requested waiver of their fees pursuant to 5 U.S.C. § 552(a)(4)(A)(iii)

    ("Documents shall be furnished without any charge...if disclosure of the information is in

    the public interest because it is likely to contribute significantly to public understanding

    of the operations or activities of government and is not primarily in the commercial

    interest of the requester").

28. Plaintiffs expressed their intention to broadly disseminate the information requested,

    explaining in detail their mission and practice of dissemination, intention to disseminate,

    including, specifically (underscore in original, bold added; citations omitted):

    > "Both entities are nonprofit public policy and/or legal institutes organized
    > under section 501(c)3 of the tax code and **with research, legal, investigative
    > journalism and publication functions, as well as transparency initiative
    > seeking public records relating to environmental and energy policy and how**

9

**policymakers use public resources, all of which include broad dissemination of public information obtained under open records and freedom of information laws…**

      <u>Contribution to an understanding by the general public</u>. Requesters have a record of obtaining and producing information as would a news media outlet and as **a legal/policy organization that broadly disseminates information** on important energy- and environmental policy related issues. Both requesters have ongoing efforts toward publication on national and state regulatory programs and their environmental and economic consequences. In addition to being functionally a news outlet, both requesters have disseminated their work in a manner that results in coverage by national news outlets on television, in national newspapers, and in policy newsletters from state and national policy institutes. ... Requesters also have the services on this matter of a lawyer experienced in broadly disseminating for public understanding large-document FOIA productions, particularly from EPA, undersigned Horner. These individuals will lead the study team and are capable of translating highly technical information into a report that is accessible to the public at large. Requesters have a recognized interest in and reputation for leading relevant policy debates and expertise in the subject of energy and environment-related regulatory policies, and they and their staffs' publications demonstrate **requesters have the "specialized knowledge" and "ability and intention" to disseminate the information requested in the broad manner, and to do so in a manner that contributes to the understanding of the "public-at-large**." (Request, at pages 1, 10-11).

29. Plaintiffs detailed the public interest specific to the records sought and their intention to disseminate in their request pages 2-3, 8-11, and 15.

### Defendant's Reply and Subsequent Proceedings
### Plaintiffs' FOIA Request EPA-R3-2014-004011

30. EPA assigned this request identification number EPA-R3-2014-004011.

31. EPA delivered a letter via electronic mail on March 7, 2014, well beyond the 20 day deadline enshrined in to FOIA, denying plaintiffs' fee waiver, disputing that, *e.g.*, the above excerpts asserted an intention to broadly disseminate responsive records. Specifically, EPA HQ stated in pertinent part, "You have not expressed a specific intent to disseminate the information to the general public". (Denial letter, p. 1).

32. As discussed previously, this is facially untrue and represents the latest in a demonstrated pattern of improper EPA use of express or constructive denial of fee waivers at the initial determination stage to delay and thereby deny access to public records for certain requests and particularly from certain requesters.  As such, defendant improperly denied the fee waiver in its effort to demand fees as a condition to processing plaintiffs' request.

33. On March 17, 2014, plaintiffs administratively appealed EPA's initial determination denying fee waiver, reiterating the rest of their statutory qualification fee waiver and demonstrating that the stated basis for denial was facially untrue by pointing to the multiple assertions of that intention (Appeal at page 3), reminding defendant of the widespread media coverage plaintiffs' past requests have obtained (*Id*., at 4-5), and again restating their intention to broadly disseminate.

34. On April 15, 2014, after public exposure for its serial practice of improperly claiming plaintiffs failed to assert an intention to broadly disseminate responsive information, defendant declared that plaintiff had provided additional information sufficient for EPA to drop that grounds for denial of plaintiffs' fee waiver.  Defendant did not specify what "additional information" in plaintiffs' appeal had satisfied the requirement that plaintiffs expressed their intention to broadly disseminate.

35. Defendant substituted another basis for denying plaintiffs' fee waiver.  This new basis was not mentioned by the defendant in initial denial of the fee waiver request but appeared for the first time in the denial of plaintiffs administrative appeal, after defendant was forced to concede its initial basis for the denial was inaccurate.  Defendant now denied fee waiver on the basis that plaintiffs did not demonstrate whether disclosure is likely to significantly contribute to an understanding of governmental operations or activities. Denial, p. 2.

36. Defendant's basis for this claim, that disclosure *of the requested records* -- emails and attachments and all requested correspondence both internally and with outside pressure groups and interests -- is unlikely to significantly contribute to public understanding of governmental operations or activities, is that EPA published "a lengthy study, public hearing process [and] administrative record that lead [sic] up to EPA's actions with regard to the Logan/Spruce action". Denial, p. 3.  As such, defendant claimed that the requested records would not significantly contribute to public understanding *because there is already other information in the public domain* about EPA actions involving some of plaintiffs' keywords.

37. Also, defendant claimed that, "While additional documents may exist beyond the lengthy public record established in this matter" -- *i.e.*, the records plaintiffs requested -- "you have not articulated how the records will significantly enhance public understanding of this issue, given the current level of public understanding." Denial at pp. 3-4.

38. FOIA requires fee waiver requesters demonstrate a significant contribution to public understanding of government operations or activities, not a subject matter or "issue".  In

particular, plaintiffs sought information that would illuminate how EPA dealt with the

broader issue of its war on coal, both within its organization and in collusion with outside

advocacy groups.  That information addresses government operations and activities.  It

may also illuminate more about the subject matter as well, but the subject matter was not

and need not be the focus of the request.  Plaintiff seeks to know what EPA did and when

it did it -- in other words, how they operate as a general in the war on coal.

## LEGAL ARGUMENTS
### Defendant EPA has Arbitrarily and Capriciously Denied Plaintiffs' Fee Waiver

39.  Plaintiffs requested waiver or reduction of all costs pursuant to 5 U.S.C. § 552(a)(4)(A)

(iii) ("Documents shall be furnished without any charge...if disclosure of the information

is in the public interest because it is likely to contribute significantly to public

understanding of the operations or activities of government and is not primarily in the

commercial interest of the requester"); also 40 C.F.R. §2.107(l), and (c).

40.  Plaintiffs do not seek these records for a commercial purpose.  Plaintiffs are organized

and recognized by the Internal Revenue Service as 501(c)3 educational organizations.

As such, plaintiffs also have no commercial interest possible in these records.  When no

commercial interest exists, an assessment of that non-existent interest is not required in

any balancing test with the public's interest.

41.  As non-commercial requesters, plaintiffs are entitled to liberal construction of the fee

waiver standards. 5 U.S.C.S. § 552(a)(4)(A)(iii*), Perkins v. U.S. Department of Veterans*

*Affairs*, 754 F. Supp. 2d 1 (D.D.C. Nov. 30, 2010).  See also *McClellan Ecological*

*Seepage Situation v. Carlucci*, 835 F. 2d 1284, 2184 (9th Cir. 1987)(the public interest

fee waiver provision "is to be liberally construed in favor of waivers for noncommercial requesters.").

42. A fee waiver request is likely to pass muster "if the information disclosed is new; supports public oversight of agency operations, including the quality of agency activities and the effects of agency policy or regulations on public health or safety; or, otherwise confirms or clarifies data on past or present operations of the government." *McClellan Ecological Seepage Situation v. Carlucci*, 835 F.2d at 1284-1286. *See also*, "A requester is likely to contribute significantly to public understanding if the information disclosed is new; supports public oversight of agency operations; or otherwise confirms or clarifies data on past or present operations of the government." 132 Cong. Rec. H9464 (Reps. English and Kindness). The requested information meets that description as specified in plaintiffs' original request and administrative appeal.

43. In addition to prescribing the requirements for a fee waiver, § 552(a)(4)(iii) states that "Documents shall be furnished without any charge or at a charge reduced below the fees established under clause (ii) if disclosure of the information is in the public interest because it is **likely to contribute significantly to public understanding of the operations or activities of the government** and is not primarily in the commercial interest of the requester." (bold added)

44. This issue is thus whether documents will contribute to public understanding of the government's activities, including how the government reached its decision and who it communicated with in reaching the decision. The law does **not** require that "Disclosure of the information should significantly enhance the public's understanding of the subject

14

in question as compared to the level of public understanding prior to disclosure." Yet this is the standard defendant claimed in denying plaintiffs' administrative appeal. Denial, p. 3.

45. Defendant has incorrectly claimed that the documents must significantly increase public understanding about the subject (here the presence of selenium in streams). However the law does not require this, nor is teaching about selenium plaintiffs aim. Instead plaintiff seeks, as the law requires, to examine how defendant reached its decision, and whether defendant improperly engaged in ex parte communications and permitted individuals with conflicts of interest to have undue influence in reaching its rule. Such information will inform the public about how defendant conducts government operations, and is precisely the sort of information that FIOA laws and fee waivers were designed to help uncover. Thus is seeking to alter the standard on which fee waivers are granted, defendant is misapplying the law and seeking to prevent exactly the sort of public education that the FIOA law was created to foster.

46. Under the Freedom of Information Act, after an individual submits a request, an agency must determine within 20 working days after the receipt of any such request whether to comply with such request. 5 U.S.C.S. § 552(a)(6)(A)(i). Under *Citizens for Responsible Ethics in Washington v. Federal Election Commission*, 711 F.3d 180, 186 (D.C. Cir. 2013), that response must provide particularized assurance of the scope of potentially responsive records, including the scope of the records it plans to produce and the scope of documents that it plans to withhold under any FOIA exemptions.

47. 5 U.S.C.S. § 552(a)(6)(A) proclaims that the 20-day time limit shall not be tolled by the agency except in two narrow scenarios: The agency may make one request to the requester for information and toll the 20-day period while it is awaiting such information that it has reasonably requested from the requester, § 552(a)(6)(A)(ii)(I), and agencies may also toll the statutory time limit if necessary to clarify with the requester issues regarding fee assessment. § 552(a)(6)(A)(ii)(II).  Neither applies in the present case.

48. In *Bensman v. National Park Service*, 806 F. Supp. 2d 31 (D.D.C. 2011) this Court noted: "[The effect of] the 2007 Amendments was to impose consequences on agencies that do not act in good faith or otherwise fail to comport with FOIA's requirements. See S. Rep. No. 110-59." To underscore Congress's belief in the importance of the statutory time limit, the 2007 Amendments declare that "[a]n agency shall not assess search fees . . . if the agency fails to comply with any time limit" of FOIA. Emphasis in the original.  In other words, the amendments were created to prevent precisely the kind of behavior that the EPA is engaging in by continuing to unjustly and unlawfully deny fee waivers after having waived its ability to assess fees by not following the statutory deadline, constructively denying the request.

49. Since defendant EPA, with regard to the request at issue in this Complaint, waived its ability to assess fees under § 552(a)(6)(A)(ii)(VIII) by not responding to plaintiffs' request by the statutory deadline, thereby rendering the question of the fee waiver moot, and by failing to provide a fee estimate within the required time even after plaintiffs explained this on appeal, EPA must agree to waive fees and produce the requested documents as required by law.

16

**FIRST CLAIM FOR RELIEF**
**Duty to Grant a Fee Waiver for FOIA EPA-R3-2014-004011**
**– Declaratory Judgment**

50. Plaintiffs re-allege paragraphs 1-49 as if fully set out herein.

51. Defendant improperly failed to grant plaintiffs' fee waiver as provided by 5 U.S.C. §

552(a)(4)(A)(iii).

52. Plaintiffs are entitled to have their fees waived for requested EPA records.

53. Defendant has wrongly denied plaintiffs' fee waiver request for these records.

54. Plaintiffs have no requirement to further pursue their administrative remedies.

55. Plaintiffs ask this Court to enter a judgment declaring that:

   a. Plaintiffs are entitled to a waiver of their fees for correspondence as specifically de-

   scribed in plaintiffs' request FOIA Number EPA-R3-2014-004011, and any

   attachments thereto;

   b. EPA's denial of plaintiffs' fee waiver request is not in accordance with the law, and

   does not satisfy EPA's obligations under FOIA;

   c. EPA must grant plaintiffs' fee waiver request; and

   d. EPA's refusal to grant this request is unlawful.

**SECOND CLAIM FOR RELIEF**
**Duty to Grant Fee Waiver for FOIA EPA-R3-2014-004011 – Injunctive Relief**

56. Plaintiffs re-allege paragraphs 1-55 as if fully set out herein.

57. Plaintiffs are entitled to injunctive relief compelling defendant to grant its request to have

its fees waived.

58. This Court should enter an injunction ordering the defendant to grant plaintiffs' fee

waiver within 10 business days of the date of the order.

## THIRD CLAIM FOR RELIEF
### Duty to Release Certain Described Records FOIA EPA-R3-2014-004011
### – Declaratory Judgment

59. Plaintiffs re-allege paragraphs 1-58 as if fully set out herein.

60. FOIA requires that covered agencies provide records responsive to legitimate requests reasonably describing desired records, subject to one of nine enumerated exemptions.

61. Defendant EPA is a covered agency.

62. Plaintiffs have sought and been denied production of responsive records reflecting the conduct of official business.

63. Plaintiffs have a statutory right to the information they seek and defendant has unlawfully failed to provide responsive records.

64. Plaintiffs have no requirement to further pursue administrative remedies.

65. The requested records are of great and timely public interest.

66. Plaintiffs ask this Court to enter a judgment declaring that:

   a. EPA correspondence as specifically described in plaintiffs' FOIA request EPA-R3-2014-004011, and any attachments thereto, are public records, and as such, are subject to release under FOIA;

   b. EPA must release those requested records or segregable portions thereof subject to legitimate exemptions; and

   c. EPA's refusal to provide records without plaintiffs assuring payment, after missing the statutory deadline, being barred by statute to assess fees, and on the claim that plaintiffs have not made the case or do not merit fee waiver, is unlawful.

**FOURTH CLAIM FOR RELIEF**
**Duty to Release Certain Described Records FOIA EPA-R3-2014-004011**
**– Injunctive Relief**

67. Plaintiffs re-allege paragraphs 1-66 as if fully set out herein.

68. Plaintiffs are entitled to injunctive relief compelling defendant to produce all records in
    its possession responsive to plaintiffs' FOIA request.

69. This Court should enter an injunction ordering the defendant to

    a.  produce to plaintiffs, within 10 business days of the date of the order, the
        requested records described in plaintiffs' FOIA request EPA-R3-2014-004011,
        and any attachments thereto, subject to legitimate withholdings; and,

    b.  provide a final agency response on the FOIA request EPA-R3-2014-004011, in
        compliance with FOIA and EPA's regulations; and,

shall retain jurisdiction to enforce the terms of the order as well as retain jurisdiction to

conduct such further proceedings and award relief as may be necessary to resolve any

breach of the order and to retain jurisdiction over any plaintiffs' motion seeking judicial

review of some or all withheld and/or redacted documents.

**FIFTH CLAIM FOR RELIEF**
**Costs And Fees – Injunctive Relief**

70. Plaintiffs re-allege paragraphs 1-69 as if fully set out herein.

71. Pursuant to 5 U.S.C. § 552(a)(4)(E), the Court may assess against the United States
    reasonable attorney fees and other litigation costs reasonably incurred in any case under
    this section in which the complainant has substantially prevailed.

72.  This Court should enter an injunction ordering the defendant to pay reasonable attorney fees and other litigation costs reasonably incurred in this case.

WHEREFORE, Plaintiffs request the declaratory and injunctive relief herein sought, and an award for their attorney fees and costs and such other and further relief as the Court shall deem proper.

Respectfully submitted this 23rd day of April, 2014,


_____/s/_____
Christopher C. Horner
D.C. Bar No. 440107
1489 Kinross Lane
Keswick, VA 22947
(202) 262-4458
CHornerLaw@aol.com


_____/s/_____
David W. Schnare
D.C. Bar No. 1015635
9033 Brook Ford Rd.
Burke, VA 22015
(571) 243-7975
SchnareFME@gmail.com

ATTORNEYS FOR PLAINTIFFS